UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| CASSANDRA MAY, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 5: 25-249-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| FRANK BISIGNANO, | ) | **MEMORANDUM OPINION** |
| Commissioner of Social Security, | ) | **AND ORDER** |
| | ) | |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Plaintiff Cassandra May ("May") appeals the Social Security Administration's denial of her claim for Disability Insurance Benefits ("DIB") and Supplemental Social Security Income ("SSI").  [Record No. 7] She contends that the Administrative Law Judge ("ALJ") assigned to her case failed to account for the total limiting effects of her impairments, resulting in a decision not supported by substantial evidence.  [*Id.*]  After reviewing the record and considering the parties' arguments, the Court concludes that the ALJ's decision is supported by substantial evidence.

**I.**

May was 24 years old at the alleged onset of disability.  [Record Nos. 6-2 at 29, 6-3 at 26] She has a high school education and prior work experience as a cashier, food preparer, customer service agent, and stocker.  [Record No. 6-6 at 47–48] May alleges that she became disabled beginning June 1, 2018, due to seizures, depression, and anxiety.  [Record Nos. 6-5 at 4, 6-6 at 8]  On July 13, 2022, She filed applications for DIB and SSI under Titles XVI and II of the Social Security Act ("Act").  [Record No. 6-2 at 18]

ALJ Greg Holsclaw held administrative hearings on December 19, 2023, and May 7, 2024, after May's claims were denied initially and on reconsideration. [*Id.* at 36–89] Thereafter, he issued an opinion denying May's claim for benefits. [*Id.* at 15–30]

On June 18, 2025, the Appeals Council denied May's request for administrative review of the ALJ's decision, thereby making it the final decision of the Commissioner. [*Id.* at 2–4] The matter is ripe for judicial review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

## II.

A "disability" under the Social Security Act ("Act") is defined as "the inability to engage in 'substantial gainful activity' because of a medically determinable physical or mental impairment of at least one year's expected duration." *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th Cir. 2007) (citing 42 U.S.C. § 423(d)(1)(A)). A claimant's disability determination is made by an ALJ in accordance with "a five-step sequential evaluation process." *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642 (6th Cir. 2006) (en banc). If the claimant satisfies the first four steps of the process, the burden shifts to the Commissioner with respect to the fifth step. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003).

> First, the claimant must demonstrate that [he or she] has not engaged in substantial gainful activity during the period of disability. Second, the claimant must show that [he or she] suffers from a severe medically determinable physical or mental impairment. Third, if the claimant shows that [his or her] impairment meets or medically equals one of the impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1, [he or she] is deemed disabled. Fourth, the ALJ determines whether, based on the claimant's residual functional capacity, the claimant can perform [his or her] past relevant work, in which case the claimant is not disabled. Fifth, the ALJ determines whether, based on the claimant's residual functional capacity, as well as [his or her] age, education, and work experience, the claimant can make an adjustment to other work, in which case the claimant is not disabled.

*Mokbel-Aljahmi v. Comm'r of Soc. Sec.*, 732 F. App'x 395, 399 (6th Cir. 2018) (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004)).

A district court's review is limited to determining whether the ALJ's findings are supported by substantial evidence[1] and whether the ALJ applied the proper legal standards in reaching his or her decision. 42 U.S.C. § 405(g); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). A reviewing court is further limited in that it is not empowered to conduct a *de novo* review, resolve conflicts in evidence, or decide questions of credibility. *See Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 713 (6th Cir. 2012). If the court finds substantial evidence to support the Commissioner's judgment, it must affirm that decision even if it would have decided the matter differently, and even if substantial evidence also supports the opposite conclusion. *Id.* at 714.

### III.

The ALJ applied the proper legal standard in reaching his opinion by conducting the five-step analysis required for evaluating social security disability cases. [Record No. 6-2 at 19–30] At step one, the ALJ determines if a claimant is engaging in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b). Substantial gainful activity occurs when a claimant performs significant physical or mental activities for pay or profit. 20 C.F.R. §§ 404.1572(b). The ALJ found that May had not engaged in substantial gainful activity since her June 1, 2018, alleged disability onset date. [Record No. 6-2 at 20] He also found that May met the insured status requirements of the Act through December 31, 2023. [*Id.*]

---

[1] Substantial evidence is defined as such relevant evidence as reasonable minds might accept as sufficient to support the conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007).

The ALJ determines at step two whether a claimant has a medically determinable impairment that is severe or a combination of impairments that collectively are severe. 20 C.F.R. §§ 404.1520(c), 416.920(c). In this case, ALJ Holsclaw concluded that May has the following severe impairments: seizures, depressive disorder, anxiety disorder, and post-traumatic stress disorder. [Record No. 6-2 at 20]

Step three requires the ALJ to ascertain if the claimant has an impairment or combination of impairments that are of severity sufficient to meet or equal the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926. At this step, the ALJ found that May's medical impairments did not meet or medically equal the severity of any listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. [Record No. 6-2 at 21]

The ALJ considers at step four whether a claimant has a residual functional capacity ("RFC") to perform his or her past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f). Here, ALJ Holsclaw found, after careful consideration of the entire record, that May has the RFC to perform a full range of work at all exertional levels, with the following nonexertional limitations:

> no work that requires climbing ladders, ropes or scaffolds; no work that requires commercial driving; no work around dangerous, moving machinery or unprotected heights; can understand, remember and carry out simple instructions; no more than occasional interaction with co-workers, supervisors, and the general public; no more than occasional changes in the workplace setting.

[Record No. 6-2 at 22] He also determined that May had no past relevant work. [*Id.* at 29]

At step five, the ALJ determines whether the claimant can do any other work considering his RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g),

-4-

416.920(g).  ALJ Holsclaw determined that, "considering the claimant's age, education, work experience, and residual functional capacity, [May] is capable of making a successful adjustment to other work that exists in significant numbers in the national economy." [Record No. 6-2 at 30]  This included occupations such as office cleaner, laundry folder, router, table worker, and small product inspector. [*Id.* at 29]  As a result, the ALJ found that May was not "disabled" within the meaning of the Act, from June 1, 2018, through the date of his decision. [*Id.* at 30]

### Evaluation of Dr. Emily Skaggs' Medical Opinion

May maintains that the ALJ failed to evaluate the total limiting effects of her impairments as required by the applicable regulations, resulting in an RFC determination unsupported by substantial evidence. [Record No. 7 at 8]  She argues that the ALJ understated her mental limitations despite record evidence (particularly Dr. Emily Skaggs' opinion and May's own statements) demonstrating significantly greater functional restrictions.[2] [*Id.* at 10]  In May's view, this evidence satisfies her burden of proving disability. [*Id.*]

Key to May's argument is the vocational expert's testimony that no jobs exist for an individual who is off task more than 20 percent of the workday. [*Id.* (citing Record No. 6-2 at 66)]  She contends that her seizures and extreme panic in stressful situations render her largely unable to tolerate stress, which would necessarily cause excessive off-task behavior. [*Id.*]  And May asserts that the ALJ failed to incorporate this limitation into the RFC *despite* Dr. Skaggs' medical opinion indicating that her ability to tolerate workplace stress is impaired to a moderate-to-marked degree. [*Id.* at 11 (citing Record No. 6-9 at 391)]  According to May, the

---

[2] The plaintiff does not challenge the physical RFC.  [*See* Record No. 7 at 2, n.1.]

ALJ's treatment of this evidence lacks substantial evidentiary support and undermines the conclusion that she can meet the basic mental demands of unskilled work. [*Id.*] She characterizes these deficiencies as a failure to account for the combined effects of her impairments. [*Id.*]

May further challenges the ALJ's evaluation of Dr. Skaggs' medical opinion, arguing that the supportability analysis is "woefully underdeveloped" because it ignores clinical findings from the examination that support greater mental limitations. [Record No. 7 at 11] In her view, the ALJ selectively summarized the opinion rather than building a logical bridge between the evidence and the persuasiveness finding, rendering the analysis unreviewable. [*Id.* at 12–13] She raises similar objections to the ALJ's consistency analysis. [*Id.* at 13]

May also disputes the ALJ's characterization of her mental health symptoms as improving or merely situational, noting that she remained at a moderate suicide risk throughout the relevant period despite years of treatment. [*Id.*] She argues that even if her symptoms were situationally triggered, that fact would reinforce—rather than undermine—Dr. Skaggs' opinion that she is markedly limited in her ability to handle ordinary workplace stress. [*Id.* at 14] May, therefore, concludes that the ALJ's rationale lacks a logical connection to the persuasiveness finding and precludes meaningful judicial review. [*Id.*]

Conversely, the Commissioner argues that the ALJ properly considered Dr. Skaggs' opinion considering the overall record, including objective medical evidence, when assessing May's mental impairments and determining work-related limitations as part of her RFC. [Record No. 11 at 4] The Commissioner also contends that substantial evidence supports the ALJ's findings regarding the persuasiveness of the opinion and asserts that May failed to meet

her burden of showing that the ALJ's RFC determination lacked substantial evidentiary support.  [*Id.* at 6–9]

Medical opinions' supportability and consistency "are the most important factors [ALJs] consider when [they] determine how persuasive [they] find a medical source's medical opinions."  20 C.F.R. § 404.1520c(b)(2).  The supportability determination is defined in this way: "[t]he more a medical source presents relevant evidence to support a medical opinion, particularly medical signs and laboratory findings, the more weight [the ALJ] will give that medical opinion."  20 C.F.R. § 404.1527(c)(3).  And "[t]he better an explanation a source provides for a medical opinion, the more weight [the ALJ] will give that medical opinion."  *Id.*

Stated differently, the supportability factor provides that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinions . . . will be."  20 C.F.R. § 4041.520c(c)(2).  And the more "consistent" a medical opinion is with the evidence from other medical and nonmedical sources in the record, the more persuasive the ALJ should find the medical opinion.  20 C.F.R. § 404.1520c(c)(2).  To be sure, the consistency factor "requires the ALJ to compare the medical opinion at issue to other medical and nonmedical sources."  *Elizabeth A. v. Comm'r of Soc. Sec.*, No. 2:22-cv-2313, 2023 WL 5924414, at *4 (S.D. Ohio Sept. 12, 2023) (citation modified).

In June 2023, after a consultative psychological examination, Dr. Skaggs determined that May's depression slightly impaired her ability to understand, remember, and carry out instructions for simple, repetitive tasks.  [Record No. 6-9 at 391]  Dr. Skaggs further found that May's ability to tolerate the stress and pressure of day-to-day employment was impaired to a moderate to marked degree.  [*Id.*]  With respect to sustained attention and concentration,

Dr. Skaggs identified slight to moderate limitations in May's ability to perform simple, repetitive tasks. [*Id.*] Finally, Dr. Skaggs concluded that May's capacity to respond appropriately to supervisors and coworkers in a work setting was impaired to a slight to moderate degree. [*Id.*] In assessing functional capacity, Dr. Skaggs' defined a "slight" limitation as a mild restriction that generally allows the individual to function well, a "moderate" limitation as one that still permitted satisfactory functions, and a "marked" limitation as a serious restriction resulting in severely limited, but not precluded, function. [*Id.*] An "extreme" limitation indicates no useful ability to function in the area. [*Id.*] Dr. Skaggs did not assess any of May's limitations as extreme. [*Id.*]

After stating that he "fully considered the medical opinions and prior administrative medical findings," the ALJ found Dr. Skaggs's opinion "not wholly persuasive." [Record No. 6-2 at 27] Specifically, ALJ Holsclaw rejected Dr. Skaggs' assessment that May had "moderate to marked" limitations in her ability to tolerate stress and pressure in day-to-day work activities. [*Id.*] The ALJ explained that a "marked" limitation is not supported by the psychological consultative examination, which notes May's inability to spell "world" backward and an anxious mood but otherwise showed unremarkable clinical findings. [*Id.* at 27–28 (citing Record No. 6-9 at 388–92)]

Instead, ALJ Holsclaw found that the longitudinal evidence demonstrates consistent improvement in May's ability to cope with and manage stress, including stress related to familial relationships. [*Id.* at 28] He further concluded that, as a whole, the record supported only moderate limitations in May's ability to adapt and manage herself, referencing his earlier, detailed discussion of this issue. [*Id*; *see* Record No. 6-2 at 22.] By contrast, the ALJ found persuasive Dr. Skaggs' opinions that May had only slight limitations in her ability to

understand, remember and carry out simple instructions, and no more than moderate limitations in attention, concentration, pace, and social functioning. [*Id.*] He explained that these opinions were supported by the psychological consultative examination and were consistent with the other evidence discussed earlier in the decision. [*Id.*]

With respect to the portion of Dr. Skaggs' opinion the ALJ found unpersuasive, the ALJ explained his consideration of the supportability and consistency factors. Regarding supportability, the ALJ determined that Dr. Skaggs' assessment of a marked limitation in stress tolerance was not supported by Dr. Skaggs' own examination findings, which were largely unremarkable aside from May's anxious mood and inability to spell "world" backward. [Record No. 6-2 at 27–28 (citing Record No. 6-9 at 388–92)]

Regarding consistency, the ALJ found that this portion of Dr. Skaggs' opinion conflicted with the longitudinal evidence and the overall record. [*Id.* at 28] He explained that the longitudinal evidence shows that May made consistent progress in coping and managing stress, and the record supported only moderate limitations in her ability to adapt or manage herself. [*Id.*] The ALJ references his earlier analysis concluding that May had no more than moderate limitations in this area. [*Id*; *see* Record No. 6-2 at 22.]

Although the ALJ acknowledged that May experiences depression and anxiety and has been diagnosed with post-traumatic stress disorder [Record No. 6-2 at 22 (citing Record No. 6-10 at 188)], he notes that from 2017 through 2021, treatment records from physical health appointments described her as calm with a normal affect. [*Id.* (citing Record No. 6-7 at 374 (Winchester Medical Association office treatment record dated November 17, 2017), 460, 463, 466, 470, 475, 479 (CHI St. Joseph Primary Care Associates office treatment records dated January 4, 2018, through July 9, 2021); Record No. 6-9 at 358, 363, 367 (CHI St. Joseph

-9-

Primary Care Associates office treatment records dated July 9, 2021, through September 2, 2022))]

The ALJ also observed that during more recent mental health therapy sessions in December 2023 and March 2024, May demonstrated appropriate affect, as well as clear and coherent speech and thought. [*Id.* (citing Record No. 6-10 at 188, 195, 209–10 (New Vista office treatment records))]  Accordingly, he explained his determination that Dr. Skaggs' opinion regarding marked limitations in stress tolerance was inconsistent with the other medical evidence in the record.

While May argues that the ALJ's explanation was inadequate, Holsclaw was not required to adopt the limitations May preferred or to discuss the evidence in greater detail than necessary.  Instead, the ALJ was required only to "explain how [he] considered the supportability and consistency factors," 20 C.F.R. § 404.1520c(b)(2).  The relevant inquiry is whether the ALJ's persuasiveness discussion permits meaningful judicial review.  *Eckert v. O'Malley*, No. 22-CV-316, 2024 WL 841765, at *5 (E.D. Ky. Feb. 28, 2024) (citing *Terhune v. Kijakazi*, No. 21-CV-37, 2022 WL 2910002, at *3 (E.D. Ky. July 22, 2022)).  Here, the ALJ provided an adequate discussion that enables meaningful review and demonstrates that his determination was supported by substantial evidence, as he cites relevant record evidence that sufficiently supports his conclusion.  *See Richardson*, 402 U.S. at 401; *Bass*, 499 F.3d at 509.  Therefore, the Court is not at liberty to "second-guess" this decision "as long as the ALJ cited substantial, legitimate evidence to support his factual conclusions," as he did here.  *Ulman*, 693 F.3d at 714.

**Assessment of May's Self-Described Limitations**

May also argues that the ALJ improperly evaluated her self-described limitations because the alleged errors in assessing the medical opinion evidence necessarily undermines the subjective-symptom analysis. [Record No. 7 at 14–15] She maintains that an ALJ must evaluate a claimant's statements in relation to the medical evidence, including medical opinions, and that the failure to properly analyze that evidence renders the ALJ's evaluation of her self-described limitations invalid. [*Id.*] The Commissioner disagrees, asserting that the ALJ appropriately considered May's subjective complaints in light of the record as a whole and reasonably concluded that her statements were not entirely consistent with the objective evidence and her treatment history. [Record No. 11 at 4–5]

An ALJ applies a two-step analysis when evaluating a claimant's subjective complaints of pain or other symptoms. First, the ALJ determines whether an "underlying medically determinable physical or mental impairment … could reasonably be expected to produce an individual's symptoms, such as pain." Soc. Sec. Ruling 16-3p, 2016 WL 1119029, at *3 (Mar. 28, 2016). Second, the ALJ evaluates the "intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities." *Id.* Here, ALJ Holsclaw properly applied this framework.

The ALJ found that May had medically determinable impairments that could reasonably be expected to cause some of her alleged symptoms but concluded that her statements concerning intensity, persistence, and the limiting effects of the symptoms are not entirely consistent with the medical and other evidence in the record. [Record No. 6-2 at 23] The ALJ considered May's testimony that her alleged disability is based on a combination of impairments, but that her primary limitations arise from psychological impairments that began

-11-

around age twenty-one, are worsened by confined spaces and fear of failure, and improved by proper sleep and pacing herself mentally. [*Id.*] After reviewing the entire record, the ALJ determined that these impairments warranted functional restrictions—limiting her to work with no workplace hazards (such as commercial driving, dangerous moving machinery, or unprotected heights), simple instructions, only occasional social interaction, and only occasional changes in the workplace setting—but did not preclude all work. [Record No. 6-2 at 22–28]

In support of this conclusion, the ALJ explained that the longitudinal treatment record for May's psychological complaints and stress-induced seizures did not fully support the severity of the symptoms she alleged. [*Id.* at 23–27] The ALJ reviewed May's mental-health treatment notes, which documented multiple life and family stressors during the relevant period but also reflected overall improvement with treatment and the use of coping skills. [*Id.* 23–24] And he cited nearly a dozen treatment notes demonstrating progress in stress management, increased coping efforts, good motivation, good insight, expressiveness, and overall improvement. [*Id.*] The ALJ also relied on physical-health treatment record from 2017 through 2021 noting that May consistently presented with normal affect and calm demeanor. [*Id.* at 24]

Although the records reflect periods of symptom exacerbation and fluctuation (particularly in response to situational stressors such as the loss of family members and interpersonal conflicts), the ALJ reasonably weighed the medical evidence and treatment history in concluding that May's subjective complaints of disabling psychological limitations were not fully supported by the record as a whole. *See* 20 C.F.R. § 404.1529(a) ("[S]tatements about your pain or other symptoms will not alone establish that you are disabled. There must

-12-

be objective medical evidence from an acceptable medical source that . . . would lead to a conclusion that you are disabled."). Because the ALJ discussed and relied on substantial evidence in support of his conclusion, the Court may not reweigh the evidence or substitute its judgment, even if substantial evidence might also support a contrary conclusion. *See Ulman*, 693 F.3d at 714.

**IV.**

Based on the foregoing analysis and discussion, it is hereby

**ORDERED** as follows:

1.      Plaintiff Cassandra May's motion for judgment [Record No. 7] is **DENIED**.

2.      Defendant Commissioner of Social Security's motion for judgment [Record No, 11] is **GRANTED.**

3.      This action is **DISMISSED** and **STRICKEN** from the docket.

Dated:  February 9, 2026.

Danny C. Reeves, District Judge
United States District Court
Eastern District of Kentucky